JUDGE HARDIN
deeivered the opinion op the court.
This suit involved the conflicting claims of the parties to a tract of about forty-six acres of land, claimed as embraced by a patent to the plaintiff issued on the 3d day of June, 1863, and which the defendant also claimed as embraced by a grant from the commonwealth to John Brooks dated in 1833, under which, to the extent of the land included by it, he derived title through several intermediate conveyances.
The court below dismissed the petition, and the plaintiff has appealed from the judgment.
The patent to Brooks, and each of three successive deeds by which the appellee acquired his title, describe the land granted to Brooks as “the fractional north-west quarter of section four, township three, range six, each containing one hundred and fourteen acresand that of the appellant contains the same description of the land therein granted to him, except as to the quantity of land, which is stated to be forty-six acres.
But it is insisted for the appellant that although the frac-. *70 tional quarter-section of land claimed by him is, except in quantity, of the same general description as that embraced by the elder patent to Brooks, and designated by the same number, the boundary of the one hundred and fourteen acres granted to Brooks did not in fact embrace any part of the land in controversy, but was so surveyed as to exclude it, in consequence of mistakes of Henderson and Rowlett, who were engaged in sectionizing lands west of the Tennessee River. And it sufficiently appears that although W. T. Henderson, who was appointed to lay off and divide said lands under the provisions of the act of February 14, 1820 (M. & B. 1040), so far discharged that duty as to locate other surveys adjacent to said tracts of one hundred and fourteen acres and forty-six acres, leaving them imperfectly surveyed, and designated as the “fractional north-west quarter of section four,” etc. Daniel Rowlett, who attempted afterward to complete the work which Henderson had left unfinished, in consequence of high water in the Tennessee River or other causes (Acts 1825, page 133), so laid down and designated by metes and bounds a tract as said “fractional north-west quarter of section four” as to include only one hundred and fourteen acres, which according to Rowlett’s survey was granted to Brooks, leaving out of and excluded from it by the boundary the tract of about forty-six acres in controversy, which the appellant claims to have acquired by his patent as a remaining fractional part of said north-west quarter of section four, etc.
It does not appear that either Brooks or any of those holding under him, except the appellant, ever occupied or claimed the land in controversy as embraced by Rowlett’s survey or lying within the patent boundary of Brooks; and the evidence conduces to the conclusion that they all recognized as limiting their possession a marked line, established by Rowlett, extending from a “ black gum-tree ” on the Tennessee River, including one hundred and fourteen acres, the quantity called *71 for in all the title-papers of the appellee, and excluding the land in dispute. If this be so, and we think it is a fair deduction from the evidence in the cause, though in some respects not as explicit as it should be, it is obvious that the defendant’s title-papers do not embrace the land in contest; and if the patent to the plaintiff does embrace it, it is not void, as contended for the appellee, to the extent of the land in controversy, as a junior patent to land already granted by the commonwealth.
But it is contended that the general description contained in the patent to the. plaintiff, being identical with that of Brooks except as to quantity, necessarily locates it on the survey of Rowlett, and it therefore as much excludes the land in controversy as the patent and deeds under which the appellee claims. But not only is this inference partially repelled by the discrepancy in the two patents as to the quantity of land granted by each; but there being no parol proof restricting it to Rowlett’s survey, it may be presumed to have been intended to embrace the tract in controversy corresponding with it in quantity, and which remained a vacant fraction of the same original quarter-section as imperfectly laid down and reported by Henderson, but by some mistake of Rowlett afterward excluded from the boundary laid down and located by him.
But it is further insisted that the patent of the appellant was void because it was obtained in violation of the provisions of the acts of 1829 and 1830 (M. & B. 1061 — 1064), declaring that no quarter-section or fractional quarter-section of land as laid off should be divided, or less than the quarter or fraction taken by entry. But this prohibition of the law, as we construe it, has no application to a case like this, in which the fraction has resulted from a mistake of the agents of the state in sectionizing the lands, and not from any act done by the patentee or others for the purpose of entering a less *72 quantity than the quarter or fractional quarter-section originally laid off.
We are of the opinion therefore that the plaintiff was entitled to a judgment quieting his title and possession of the tract of about forty-six acres of land in controversy.
Wherefore the judgment is reversed, and the cause remanded for a judgment in conformity with this opinion.
The Chief Justice did not sit in this case.
The foregoing opinion and mandate as at first rendered being reconsidered on petition for a rehearing, the court, though adhering to the conclusions' of law therein expressed, and also to the opinion that the court below erred in dismissing the petition on the state of pleading and preparation presented by the record, so modifies the opinion and mandate as on the return of the cause to allow further pleading and preparation as to the relative location and description of the lands claimed by both parties, and other material facts involved in the controversy, and further proceedings not inconsistent with said opinion as thus modified.'